# EXHIBIT A

**IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT**
**IN AND FOR DUVAL COUNTY, FLORIDA**
**CIVIL DIVISION**

**Allied Property and Casualty Insurance Company**
**as subrogee of**
**James Michael Howard, Inc.,**

       **Plaintiff,**                               **CASE NO.:**

**vs.**

**Dupre Logistics, LLC and**
**V & M Transport,**

       **Defendants.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff Allied Property and Casualty Insurance Company as subrogee of

James Michael Howard, Inc. by and through the undersigned counsel, and hereby sues Defendant

Dupre Logistics, LLC and Defendant V & M Transport and states the following:

## PARTIES

1.      Subrogee Allied Property and Casualty Insurance Company ("ALLIED") is a foreign

corporation authorized to, and doing business in Duval County, Florida and a provider of insurance

doing business in Florida as an admitted carrier, with its principal place of business located at 1100

Locust Street, Des Moines, IA 50391-1100.

2.      Subrogor James Michael Howard, Inc. ("HOWARD") is a Florida Profit Corporation

authorized to, and doing business in Duval County, Florida, with its principal place of business

located at 4128 Herschel Street, Jacksonville, FL 32210 and is an interior design and decoration

company.

3.      Defendant Dupre Logistics, LLC ("DUPRE") is a foreign company with a principal

place of business located at 201 Energy Pkwy, Ste 500, Lafayette, LA, 70508 and is listed as an

ACCEPTED: DUVAL COUNTY, JODY PHILLIPS, CLERK, 12/19/2023 03:13:11 PM

active "carrier / cargo tank / broker" with the FMCSA operating under USDOT Number 214438 and Docket Number MC-158069.

4.      Upon information and belief, Defendant V & M Transport ("V & M") is a foreign company with a principal place of business located at 6012 Carpenter Ave., North Hollywood, CA 91606 and is listed as a motor carrier with the FMCSA operating under USDOT Number 2955752 and Docket Number MC-1749, with current "Operating Status: Not Authorized."

5.      ALLIED insured HOWARD under a Contract of Insurance which was in full force and effect at the time of the incident and loss referred to below. *See,* Policy attached as **EXHIBIT A**.

6.      Under the terms of said policy, and by operation of Florida law, ALLIED has become an actual, bona fide subrogee of HOWARD, and has become subrogated to all of the rights and claims that HOWARD may have against any person or entity that may be liable for causing the damage at issue, including DUPRE and V & M.

7.      Plaintiff expressly reserves the right to amend and/or supplement this Complaint as more information becomes available related to any issue involved herein including but not limited to the identity, ownership, and/or involvement of any liable parties.

## JURISDICTION AND VENUE

8.      This is an action for damages that exceeds $50,000.00, exclusive of interests, costs, and attorney's fees.

9.      Venue is proper as the subject shipment giving rise to this action was picked up for transport in Duval County, Florida and Subrogor maintains its principal place of business in Duval County, Florida.

## GENERAL ALLEGATIONS

10.     On or about November 25, 2022, HOWARD and DUPRE entered into an agreement wherein DUPRE would arrange the transportation of HOWARD's custom built bunk beds from 5343 Normandy Blvd., Unit 101, Jacksonville, FL 32205 to its customer located at 509 Captains Neck Lane, Southampton, NY 11968 and, upon information and belief, DUPRE subcontracted the transportation to V & M to serve as Motor Carrier to provide the transportation service to HOWARD. *See*, **EXHIBIT B** - Dupre Invoice No. SO3764467; *see also*, **EXHIBIT C** – Bill of Lading Nos. 0012345 and 00012378.

11.     The subject cargo was accepted by DUPRE and/or V&M in Jacksonville, Florida in good order and condition in accordance with the agreement and as agreed in the Bill of Lading. *See,* **EXHIBIT C** – Bill of Lading Nos. 0012345 and 00012378.

12.     At the time of delivery, on or about November 27, 2022, the load was rejected due to the custom-built bunk beds becoming warped and damaged while in transit, as the delivery truck's top had been torn off after running into a low lying bridge, allowing debris and moisture into the truck bed causing extensive damage to the custom built bunk beds.

13.     As a result, the subject cargo was not delivered in good order and condition in breach of contract or carriage for the shipment.

14.     Upon information and belief, on or about November 28, 2022, a claim for loss and damage for the subject cargo was delivered to DUPRE and V&M containing facts sufficient to identify the shipment of property, asserting liability for the loss and damage, and making a claim for payment.

15.     On or about May 16, 2023, DUPRE denied liability and declined to pay.

16.     Upon information and belief, to date, V & M has failed to acknowledge the claim for loss and damage for the subject cargo, as required by 49 C.F.R. § 370.5, and failed to decline, pay,

or offer a written settlement compromise for some or all of the claims as required by 49 C.F.R. § 370.9(a).

17.     ALLIED is entitled to bring this subrogation claim pursuant to the terms of the insurance policy provided to HOWARD and pursuant to applicable law.

18.     All conditions precedent to the maintenance of this action either have occurred, have been satisfied, or have been waived.

**COUNT I: VIOLATION OF 49 U.S.C.A. § 14706 AGAINST V & M**

19.     Plaintiff restates and re-alleges the allegations contained in Paragraphs 1-18 as if fully set forth herein.

20.     V & M is liable to HOWARD for full, actual damages as a motor carrier under 49 U.S.C.A. § 14706.

21.     As a result of V & M's conduct and actions described above, V & M is liable for actual damages in the amount of $77,600.00 (including $1,000.00 deductible) together with interest on such amount from the date that the shipment was scheduled to be delivered.

22.     The insurance coverage provided by ALLIED to HOWARD was in effect at the time of the subject cargo damage.

23.     As a result of the subject cargo damage, ALLIED has made payments to and on behalf of HOWARD totaling Violation (including $1,000.00 deductible).

24.     Under the terms of said policy, HOWARD subrogated its rights to bring this action against V & M to ALLIED.

25.     As a result of V & M's violation under 49 U.S.C.A. § 14706 and 49 C.F.R. Part 370 (49 C.F.R. §§ 370.1 et seq.), ALLIED is entitled to an award of actual damages in the amount of $77,600.00 (including $1,000.00 deductible), together with interest on such amount from

the date that the shipment was scheduled to be delivered, as well as an award for reasonable

attorney's fees under 49 U.S.C.A. § 14704(e).

## COUNT II: NEGLIGENCE AGAINST V & M

26.     Plaintiff restates and re-alleges the allegations in paragraphs 1-18 as if fully set forth

herein.

27.     V & M owed HOWARD a duty to use reasonable care when delivering the subject

cargo.

28.     V & M breached its duty to use reasonable care by negligently allowing the subject

cargo to become damaged in transit when the truck ran into a low-lying bridge, tearing off the top of

the truck, allowing debris and moisture to penetrate the cargo during the delivery resulting in

unacceptable damage and rejection of the load at the time of delivery.

29.     V & M further breached its duty to use reasonable care when it failed to employ

agents, servants, and/or employees with proper knowledge, training, and experience to perform the

delivery of the subject cargo.

30.     V & M further breached its duty to use reasonable care when it failed to adequately

supervise and inspect the work performed by its contractors, employees, and/or agents for the

delivery of the subject cargo.

31.     As a direct and proximate cause of V & M's negligence, ALLIED was damaged by

the decay and rejection of the subject cargo causing damages for which HOWARD was liable.

32.     As a result of the damage, ALLIED ultimately bore costs of the damage for the rejected

subject cargo, pursuant to HOWARD's Policy of Insurance with ALLIED.

33.     The insurance coverage provided by ALLIED was in effect at the time of the damage.

34.     As a result, ALLIED has made payments to and on behalf of HOWARD totaling

$77,600.00 (including $1,000.00 deductible).

## COUNT III: EQUITABLE SUBROGATION AGAINST V & M

35.     Plaintiff restates and re-alleges the allegations in paragraphs 1-34 as if fully set forth herein.

36.     As a result of the aforementioned loss and damage, ALLIED ultimately bore costs of the damage for the rejected subject cargo, pursuant to HOWARD's Policy of Insurance with ALLIED.

37.     The insurance coverage provided by ALLIED was in effect at the time of the damage.

38.     As a result, ALLIED has made payments to and on behalf of HOWARD totaling $77,600.00 (including $1,000.00 deductible).

39.     ALLIED made the payments to and on behalf of HOWARD to protect its own interests.

40.     ALLIED did not act as a volunteer in making those payments to its insured, HOWARD.

41.     ALLIED was not primarily liable for the debt to HOWARD but paid the entire debt.

42.     Payment by V & M to ALLIED would not work any injustice for said payment.

## COUNT IV: VIOLATION OF 49 U.S.C.A. § 14706 AGAINST DUPRE

43.     Plaintiff restates and re-alleges the allegations contained in Paragraphs 1-18 as if fully set forth herein.

44.     DUPRE is liable to HOWARD for full, actual damages as a motor carrier under 49 U.S.C.A. § 14706.

45.     As a result of DUPRE's conduct and actions described above, DUPRE is liable for actual damages in the amount of $77,600.00 (including $1,000.00 deductible) together with interest on such amount from the date that the shipment was scheduled to be delivered.

46.     The insurance coverage provided by ALLIED to HOWARD was in effect at the time of the subject cargo damage.

47.     As a result of the subject cargo damage, ALLIED has made payments to and on behalf of HOWARD totaling $77,600.00 (including $1,000.00 deductible).

48.     Under the terms of said policy, HOWARD subrogated its rights to bring this action against DUPRE to ALLIED.

49.     As a result of DUPRE's violation under 49 U.S.C.A. § 14706 and 49 C.F.R. Part 370 (49 C.F.R. §§ 370.1 et seq.), ALLIED is entitled to an award of actual damages in the amount of $77,600.00 (including $1,000.00 deductible), together with interest on such amount from the date that the shipment was scheduled to be delivered, as well as an award for reasonable attorney's fees under 49 U.S.C.A. § 14704(e).

## COUNT V: NEGLIGENCE AGAINST DUPRE

50.     Plaintiff restates and re-alleges the allegations in paragraphs 1-18 as if fully set forth herein.

51.     DUPRE owed HOWARD a duty to use reasonable care when delivering the subject cargo.

52.     DUPRE breached its duty to use reasonable care by negligently allowing the subject cargo to become damaged in transit when the truck ran into a low lying bridge, tearing off the top of the truck, allowing debris and moisture to penetrate the cargo during the delivery resulting in unacceptable damage and rejection of the load at the time of delivery.

53.     DUPRE further breached its duty to use reasonable care when it failed to employ agents, servants, and/or employees with proper knowledge, training, and experience to perform the delivery of the subject cargo.

54.     DUPRE further breached its duty to use reasonable care when it failed to adequately supervise and inspect the work performed by its contractors, employees, and/or agents for the delivery of the subject cargo.

55.     As a direct and proximate cause of DUPRE's negligence, ALLIED was damaged by the decay and rejection of the subject cargo causing damages for which HOWARD was liable.

56.     As a result of the damage, ALLIED ultimately bore costs of the damage for the rejected subject cargo, pursuant to HOWARD's Policy of Insurance with ALLIED.

57.     The insurance coverage provided by ALLIED was in effect at the time of the damage.

58.     As a result, ALLIED has made payments to and on behalf of HOWARD totaling $77,600.00 (including $1,000.00 deductible).

**COUNT VI: EQUITABLE SUBROGATION AGAINST DUPRE**

59.     Plaintiff restates and re-alleges the allegations in paragraphs 1-18 and paragraphs 43-58 as if fully set forth herein.

60.     As a result of the aforementioned loss and damage, ALLIED ultimately bore costs of the damage for the rejected subject cargo, pursuant to HOWARD's Policy of Insurance with ALLIED.

61.     The insurance coverage provided by ALLIED was in effect at the time of the damage.

62.     As a result, ALLIED has made payments to and on behalf of HOWARD totaling $77,600.00 (including $1,000.00 deductible).

63.     ALLIED made the payments to and on behalf of HOWARD to protect its own interests.

64.     ALLIED did not act as a volunteer in making those payments to its insured, HOWARD.

65.     ALLIED was not primarily liable for the debt to HOWARD but paid the entire debt.

66.     Payment by DUPRE to ALLIED would not work any injustice for said payment.

WHEREFORE, Plaintiff Allied Property and Casualty Insurance Company as subrogee of James Michael Howard, Inc. demands judgment against Defendant Dupre Logistics, LLC and

Defendant V & M Transport in the amount of $77,600.00 (including $1,000.00 deductible), together

with interest, and other such and further relief that the Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff Allied Property and Casualty Insurance Company as subrogee of James Michael

Howard, Inc. hereby demands Trial by Jury in this matter for all matters so triable.


Respectfully submitted on this 18th day of December, 2023.


/s/ Joseph C. Proulx
Joseph C. Proulx, Esq.
Florida Bar No.: 0056830
**GOLDEN ALBINSON PROULX**
410 South Ware Blvd., Suite 806
Tampa, FL 33619
Main Line: (813) 251-3632
Direct Line: (656) 212-4253
Email: jproulx@gapfirm.law
*Attorney for Plaintiff*



# Certification

I, DEBBIE ALLISON, as a duly authorized ALLIED PROP AND CAS INS CO associate entrusted with oversight of the system of record from which this copy was produced, based upon information and belief; certify under the penalty of perjury that this attached copy of ACP CIMP 5995779698 effective 03/30/22 to 03/30/23 issued to JAMES MICHAEL HOWARD INC was made at or near the time of certification, as part of regularly conducted business activities, and is a true and accurate copy of the official record kept as part of regular business activities.

Debbie Allison
box SIGN          17723RV1-4276736Z

Dec 7, 2023

_____          _____
Debbie Allison                              Date
Director, Process Management

**Nationwide®**
is on your side

4      45     PZ

JAMES MICHAEL HOWARD, INC.
DBA MAX & COMPANY
4128 HERSCHEL ST
JACKSONVILLE, FL 32210-2260

PLEASE KEEP THIS FOR YOUR RECORDS

We are pleased to serve your business insurance needs. Our company is committed to providing you high quality insurance protection and superior service.

*IMPORTANT INFORMATION ABOUT YOUR POLICY … … … … .*

Attached is a recent change to your policy. This change was initiated either by you, your agent or by Nationwide and does affect your coverage.

Please read the attached information carefully. It will provide you with all the detailed information regarding the change to your policy. Should you have any additional questions regarding this communication, please contact your agent.

YOUR BILLING ACCOUNT NUMBER IS: 809968113

# Your Commercial Insurance Package
## Courtesy of :

AGENCY -   FL   59745

LASSITER WARE INC
1317 CITIZENS BLVD
LEESBURG FL  34748-3923

POLICY #   ACP    59-9-5779698

**COMMERCIAL PACKAGE - ACP  59-9-5779698**

00(8)0-80) 96591

LHIP      R    120623        INSURED COPY              ACP     59-9-5779698        45   0002625

**IN 74 29 12 15**

★ ★ ★ ★ ★ ★ ★     IMPORTANT INSURANCE INFORMATION     ★ ★ ★ ★ ★ ★ ★

Please read this Notice carefully.  No coverage is provided by this notice nor can it be construed to replace any provision of your policy.  You should read your policy and review your declarations page for complete information on the coverages you are provided. If there is any conflict between the policy and this notice, the provisions of the policy shall prevail.

# FLORIDA CUSTOMER SERVICE NOTIFICATION

We want to make it as easy as possible for you to be able to contact us when you have a claim or a question regarding your insurance.  Our aim is to provide you the service you need.

If you have a loss and need to report a claim – just call our 24-hour toll free **Claims Number** 1-800-421-3535 from anywhere in the country.

When you talk to someone about your policy(s) or any other insurance concern, please contact your agent.  His or her name and telephone number can be found on the Policy Declaration or a Billing Notice.

You may also write or call our Customer Service Department:

Nationwide Insurance Company
Attn: Customer Relations Department
One West Nationwide Bl
Columbus Oh 43215-2220
877-669-6877 (toll free)
Web:  www.nationwide.com

Written correspondence is preferable so that a record of your inquiry is maintained.  When contacting your agent or the company, have your policy number available.

Please keep this information with your insurance policy for handy reference.

IN 79 30 01 22

★ ★ ★ ★ ★ ★ ★    IMPORTANT INSURANCE INFORMATION    ★ ★ ★ ★ ★ ★ ★

Please read this Notice carefully.  No coverage is provided by this notice nor can it be construed to replace any provision of your policy.  You should read your policy and review your declarations page for complete information on the coverages you are provided. If there is any conflict between the policy and this notice, the provisions of the policy shall prevail.

# FLORIDA INSURANCE GUARANTY ASSOCIATION (FIGA)

The FIGA Board of Directors has certified the need for a 0.70% assessment on its member insurers.  The assessment is necessary to secure funds for the payment of covered claims related to new insolvencies in FIGA's Other Account.  Member insurers will be required to collect an equivalent surcharge on new and renewal policies with effective dates beginning January 1, 2022 through December 31, 2022.

ACP CIMP5995779698                                    INSURED                                    45  0002627

59745

**RENEWAL**

**ALLIED PROP AND CAS INS CO**                    **DECLARATIONS**
**1100 LOCUST ST DEPT 1100**
**DES MOINES IA**          503912000

**COMMERCIAL INLAND MARINE**

Policy Number: **ACP  CIMP 5995779698**

Named Insured: **JAMES MICHAEL HOWARD INC**
                     **- SEE NAMED INSURED SCHEDULE**

Mailing Address: **4128 HERSCHEL ST**
                     **JACKSONVILLE**          **FL    32210 -2260**

Agent: **LASSITER WARE INC**
Address: **LEESBURG FL**                      **34748 -0000        45      09 59745      0002**

Policy Period: This policy is effective from **03/30/22** to **03/30/23** 12:01 AM Standard time at the above
                     mailing address.

**IN RETURN FOR** THE **PAYMENT** OF THE **PREMIUM, AND SUBJECT** TO ALL THE **TERMS** OF **THIS POLICY,**
WE AGREE TO **PROVIDE** THE **INSURANCE** AS STATED IN THIS POLICY.

| ITEM NO. | DESCRIPTION | COVERAGE AMOUNT | DED. AMT. | RATE | PREMIUM |
|---|---|---|---|---|---|
| 001 | SCHEDULED PROPERTY FLOATER COVERAGE - IM7500 & IM7506 | $375,000 | $1,000 | .50 | ■■■ |
|  | SURCHARGE PREMIUM |  |  |  | ■■■ |

| POLICY FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION: |
|---|
| CL0100   0399   CL0600   0115   CL0160   0805   CL0700   1006   CL5999   0801 |
| IMA328   0300   IMA329   0901   IM2019   0906   IM2020   0105   IM2200   0604 |
| IN7429   1215   IM7500   0404   IM7506   0404   CL0605   0115   IN7930   0122 |
| 17264   1088 |

| LOSS PAYEE:   Each loss will be adjusted with the insured. Losses are payable to the insured and: | TOTAL ANNUAL PREMIUM | ■■■ |
|---|---|---|

PREVIOUS POLICY NUMBER

**ACP  CIMP 5985779698**                                        Countersignature                        Date

**COMMERCIAL INLAND MARINE SCHEDULE OF ASSESSMENTS AND SURCHARGES**

Policy Number:  **ACP  CIMP 5995779698**          Period: From   **03/30/22**   To **03/30/23**

Named Insured:   **JAMES MICHAEL HOWARD INC**
                          **- SEE NAMED INSURED SCHEDULE**


**FL      FLORIDA INSURANCE GUARANTY ASSOCIATIONS 2022**          








**All terms and conditions of this policy apply unless modified by this endorsement.**


**CIM- D1 (01-08)**

**ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY**

**IN WITNESS WHEREOF** the Company has caused this policy to be signed by its president and secretary and countersigned on the declarations page by a duly authorized representative of the company.

SECRETARY                              PRESIDENT

**ALLIED PROP AND CAS INS CO**

## COMMERCIAL INLAND MARINE
### FORMS AND ENDORSEMENTS SUMMARY

Number: **ACP  CIMP   5995779698**

Period:
From **03/30/22**    To **03/30/23**

| FORM/ENDORSEMENT | DATE | TITLE |
|---|---|---|
| CL0100 | 0399 | COMMON POLICY CONDITIONS |
| CL0160 | 0805 | AMENDATORY ENDORSEMENT - FLORIDA |
| CL0600 | 0115 | CERTIFIED TERRORISM LOSS |
| CL0605 | 0115 | CERTIFIED TERRORISM LOSS DISCLOSURE OF PREMIUM AND FEDERAL S |
| CL0700 | 1006 | VIRUS OR BACTERIA EXCLUSION |
| CL5999 | 0801 | AMENDATORY ENDORSEMENT - PREMIUM DUE DATE |
| IMA328 | 0300 | ACTUAL CASH VALUE |
| IMA329 | 0901 | ENDORSEMENT - POLLUTANTS |
| IM2019 | 0906 | AMENDATORY ENDORSEMENT - FLORIDA |
| IM2020 | 0105 | AMENDATORY ENDORSEMENT - FLORIDA |
| IM2200 | 0604 | AMENDATORY ENDORSEMENT - FUNGUS EXCLUSION AND LIMITED COVERA |
| IM7500 | 0404 | SCHEDULED PROPERTY COVERAGE |
| IM7506 | 0404 | SCHEDULE OF COVERAGES SCHEDULED PROPERTY FLOATER |
| IN7429 | 1215 | FLORIDA CUSTOMER SERVICE INFORMATION |
| IN7930 | 0122 | FLORIDA FIGA IMPORTANT NOTICE |
| 17264 | 1088 | NAMED INSUREDS |

17206 (10-88)

**ALLIED PROP AND CAS INS CO**

## COMMERCIAL INLAND MARINE
### SCHEDULE OF INSUREDS

Policy Number: **ACP CIMP 5995779698**

Policy Period:
From **03/30/22** To **03/30/23**

INSURED NAMES

**JAMES MICHAEL HOWARD INC**

**- JAMES MICHAEL HOWARD, INC. - DBA**

**MAX & COMPANY**

**1001 EAST MOREHEAD STREET, LLC**

**OEUVRE 2, LLC**

**HOWARD, JAMES M - INDIVIDUAL**

**HOWARD, PHOEBE M - INDIVIDUAL**

**OEUVRE, LLC**

17264 (10-88)

CL 0100 (03-99)
Ed. 2.0

## COMMON POLICY CONDITIONS

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

1. **Assignment** - This policy may not be assigned without "our" written consent.

2. **Cancellation** - "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

   "We" may cancel this policy, or one or more of its parts, by written notice sent to "you" at "your" last mailing address known to "us". If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

   If "we" cancel this policy for nonpayment of premium, "we" will give "you" notice at least ten days before the cancellation is effective. If "we" cancel this policy for any other reason, "we" will give "you" notice at least 30 days in advance of cancellation. The notice will state the time that the cancellation is to take effect.

   "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a rea-

sonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification or Waiver of Policy Terms** - A waiver or change of the "terms" of this policy must be issued by "us" in writing to be valid.

4. **Inspections** - "We" have the right, but are not obligated, to inspect "your" property and operations at any time. This inspection may be made by "us" or may be made on "our" behalf. An inspection or its resulting advice or report does not warrant that "your" property or operations are safe, healthful or in compliance with laws, rules or regulations. Inspections or reports are for "our" benefit only.

5. **Examination of Books and Records** - "We" may examine and audit "your" books and records that relate to this policy during the policy period and within three years after the policy has expired.

Copyright, American Association of Insurance Services, 1998

CL0160 08 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDATORY ENDORSEMENT
## FLORIDA

1. Under Common Policy Conditions, Cancellation is deleted and replaced by the following:

**Cancellation and Nonrenewal** -- "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

"We" may cancel or not renew this policy by written notice to "you" at the address shown in the policy. "Our" notice will state the specific reasons for cancellation or nonrenewal. Proof of delivery or mailing is sufficient proof of notice.

"We" may cancel or not renew this policy on the basis of property insurance claims that are the result of an act of God only if "we" can show, by claims frequency or otherwise, that "you" have failed to take action reasonably necessary as requested by "us" to prevent further damage to "your" property.

"We" may cancel or not renew this policy on the basis of a single property claim which is the result of water damage, only if "we" can demonstrate that "you" have failed to take action reasonably requested by "us" to prevent a future similar occurrence of damage to the insured property.

a. If this policy has been in effect for 90 days or less, "we" may cancel for any reason.

"We" will give "you" notice at least ten days before the cancellation is to be effective if "we" cancel for nonpayment of premium, material misstatement or misrepresentation, or failure to comply with the underwriting requirements that "we" have established.

Otherwise, "we" will give "you" notice at least 20 days before the cancellation is to be effective.

b. If the policy has been in effect for more than 90 days, or if it is a renewal of a policy issued by "us", "we" may cancel or not renew this policy only at the anniversary date unless one or more of the following reasons apply:

1) the premium has not been paid when due;
2) there has been material misstatement or misrepresentation;
3) there has been failure to comply with underwriting requirements that "we" established within 90 days of the policy effective date;
4) there has been a substantial change in the risk covered; or
5) there has been cancellation for all insureds for a given class of insureds.

"We" will give "you" notice at least ten days before the cancellation is to be effective if "we" cancel for nonpayment of premium.

If this policy is issued to cover one- to four-family dwellings used for residential purposes, condominium associations, apartment buildings, or any personal property incidental to residential occupancies, "we" will give "you" notice at least 90 days before the cancellation or nonrenewal is to be effective if "we" cancel or nonrenew for any reason other than nonpayment of premium.

Otherwise, "we" will give "you" notice at least 45 days before the cancellation or nonrenewal is to be effective if "we" cancel or nonrenew for any reason other than nonpayment of premium.

---

**CL0160 08 05**    Copyright, American Association of Insurance Services, Inc., 2005    **Page 1 of 2**

**CL0160 08 05**

"Your" return premium, if any, will be refunded within 15 working days after the effective date of cancellation unless the final policy premium is determined by audit. If the final policy premium is determined by audit, an audit will be performed and premium refunded within 90 days from the date of cancellation. If an audit cannot be completed within that time, "we" will accept audit information that "you" provide and refund any return premium within ten working days after "we" receive the necessary audit information from "you". If "we" are unable to obtain audit information due to "your" lack of cooperation, the deposit premium will be considered fully earned. In all cases, if the return premium is $5.00 or less, "we" will only provide a refund if "you" specifically request the refund. Payment or tender of unearned premium is not a condition of cancellation.

2.  Under Common Policy Conditions, the following condition is added:

    **Renewal** -- If "we" decide to renew this policy, "we" will give "you" written notice of the renewal premium at least 45 days prior to the renewal date.

3.  Under Common Policy Conditions, Inspections is deleted and replaced by the following:

    **Inspections** -- "We" have the right, but are not obligated, to inspect "your" property and operations. This inspection may be made by "us" or may be made on "our" behalf. An inspection or its resulting advice or report is not an agreement that "your" property or operations are safe, healthful, or in compliance with laws, rules, or regulations. Inspections or reports are for "our" benefit only.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Contains copyrighted material of American Association of Insurance Services.
© American Association of Insurance Services, 2005

CL 06 00 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CERTIFIED TERRORISM LOSS

1.  The following definitions are added.

    a.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:

        1)  to be an act of terrorism;
        2)  to be a violent act or an act that is dangerous to human life, property, or infrastructure;
        3)  to have resulted in damage:

            a)  within the United States; or
            b)  to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission;

        4)  to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and
        5)  to have resulted in insured losses in excess of five million dollars in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended.

    b.  "Certified terrorism loss" means loss that results from a "certified act of terrorism".

2.  The "terms" of any terrorism exclusion that is part of or that is attached to this Coverage Part are amended by the following provision:

This exclusion does not apply to "certified terrorism loss".

3.  The following provision is added.

    If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a Program Year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a Program Year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

4.  The following provisions are added.

    a.  Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this Coverage Part provide coverage for any loss that would otherwise be excluded by this Coverage Part under:

        1)  exclusions that address war, military action, or nuclear hazard; or
        2)  any other exclusion; and

    b.  the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this Coverage Part under:

        1)  exclusions that address war, military action, or nuclear hazard; or
        2)  any other exclusion.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Copyright, American Association of Insurance Services, Inc., 2015

INSURED

CL 06 05 01 15

# CERTIFIED TERRORISM LOSS DISCLOSURE OF
# PREMIUM AND FEDERAL SHARE OF INSURED LOSSES

The entries required to complete this endorsement will be shown below, on the "declarations", or on the "schedule of coverages".

## SCHEDULE

Certified Terrorism Loss Premium   $ _____

Additional information, if any, concerning terrorism premium:

1. The portion of "your" premium that is attributed to coverage for "certified terrorism loss" is shown in the Schedule above.

2. Coverage for "certified terrorism loss", to the extent that such coverage is provided by this policy or Coverage Part, will be partially reimbursed by the United States Government, Department of Treasury under a federal program. Under that program, the United States pays the following percentage of insured losses for "certified terrorism loss" that exceeds the statutorily established deductible that "we" retain:

   a. 85%, for insured losses occurring before January 1, 2016;

   b. 84%, for insured losses occurring during the 2016 calendar year;

   c. 83%, for insured losses occurring during the 2017 calendar year;

   d. 82%, for insured losses occurring during the 2018 calendar year;

   e. 81%, for insured losses occurring during the 2019 calendar year; and

   f. 80%, for insured losses occurring on or after January 1, 2020.

However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act, as amended, exceed one hundred billion dollars in a calendar year (January 1 through December 31), the Treasury will not make payment for any portion of the amount of such losses that exceeds one hundred billion dollars.

If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a calendar year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a calendar year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

**All terms and conditions of this policy apply unless modified by this endorsement.**

CL0700 10 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## VIRUS OR BACTERIA EXCLUSION

### DEFINITIONS

**Definitions Amended** --

When "fungus" is a defined "term", the definition of "fungus" is amended to delete reference to a bacterium.

When "fungus or related perils" is a defined "term", the definition of "fungus or related perils" is amended to delete reference to a bacterium.

### PERILS EXCLUDED

The additional exclusion set forth below applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.

1.  The following exclusion is added under Perils Excluded, item 1.:

    **Virus or Bacteria** --

    "We" do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

This exclusion applies to, but is not limited to, any loss, cost, or expense as a result of:

a.  any contamination by any virus, bacterium, or other microorganism; or

b.  any denial of access to property because of any virus, bacterium, or other microorganism.

2.  **Superseded Exclusions** -- The Virus or Bacteria exclusion set forth by this endorsement supersedes the "terms" of any other exclusions referring to "pollutants" or to contamination with respect to any loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

### OTHER CONDITIONS

**Other Terms Remain in Effect** --

The "terms" of this endorsement, whether or not applicable to any loss, cost, or expense, cannot be construed to provide coverage for a loss, cost, or expense that would otherwise be excluded under the policy to which this endorsement is attached.

**All terms and conditions of this policy apply unless modified by this endorsement.**
Contains copyrighted material of American Association of Insurance Services.
© American Association of Insurance Services, 2006

ACP CIMP5995779698                          INSURED                          45   0002638

EFFECTIVE DATE: 12:01 AM Standard Time,                                    **INLAND MARINE**
    (at your principal place of business)                          **CL 59 99 (08-01)**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDATORY ENDORSEMENT
# PREMIUM DUE DATE

The following condition is added:

**Additional Premium Due After Expiration --** If the premium for coverage provided by this policy is based upon an audit of exposurers or reports of value and the final premium is determined after the expiration of the policy, any additional premium owed to "us" is due on the due date that appears on the billing notice.

        **All terms and conditions of this policy apply unless modified by this endorsement.**

Copyright, American Association of Insurance Services, 2001

**CL 59 99 (08-01)**

**IMA 328 (03-00)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ENDORSEMENT - ACTUAL CASH VALUE**

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence.  Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

**INLAND MARINE**
**IMA 329 (09-01)**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ENDORSEMENT - POLLUTANTS

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

The following replaces the DEFINITION for "Pollutants" and supercedes any provisions to the contrary:

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant including but not limited to smoke, vapor, soot, fumes, acids, alkalis, petroleum products and their derivatives, chemicals and waste. Such irritants or contaminants are "pollutants" whether or not they have any function in your business, operations, premises, sites, or locations.

Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed and livestock, poultry or other animal excrement.

**IMA 329 (09-01)**

IM2019 09 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDATORY ENDORSEMENT
## FLORIDA

1.  Under Loss Payment, Your Losses is amended to include the following:

    If "we" have agreed in writing to the settlement of a claim, "we" will pay for that loss within 20 days after such settlement is reached.

2.  Under Other Conditions, Misrepresentation, Concealment, Or Fraud is deleted and replaced by the following:

    **Misrepresentation, Concealment, Or Fraud** -- This coverage may be voided if, before or after a loss:

    a.  an insured has willfully concealed or misrepresented:

        1)  any material fact or circumstance concerning this insurance; or
        2)  an insured's interest herein if material.

        This means "we" would not have issued the policy at the premium charged if "we" had known the facts "you" concealed or misrepresented.

    b.  there has been fraud or false swearing by an insured with respect to this insurance or the subject thereof.

3.  In all coverage forms except Cold Storage Locker Coverage, Motor Truck Cargo Legal Liability Coverage, and Warehouse Legal Liability Coverage, under Other Conditions, paragraph b. of Suit Against Us is deleted and replaced by the following:

    b.  the suit has been brought within five years after "you" first have knowledge of the loss.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Contains copyrighted material of American Association of Insurance Services.
© American Association of Insurance Services, 2006

ACP CIMP5995779698                              INSURED                              45   0002642

IM2020 01 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDATORY ENDORSEMENT
## FLORIDA

1.  Under Loss Payment, Your Losses is amended to include the following:

    If "we" have agreed in writing to the settlement of a claim, "we" will pay for that loss within 20 days after such settlement is reached.

2.  Under Other Conditions, Misrepresentation, Concealment, Or Fraud is deleted and replaced by the following:

    **Misrepresentation, Concealment, Or Fraud** -- This coverage may be voided if, before or after a loss:

    a.  an insured has willfully concealed or misrepresented:

        1)  any material fact or circumstance concerning this insurance; or
        2)  an insured's interest herein if material.

        This means "we" would not have issued the policy at the premium charged if "we" had known the facts "you" concealed or misrepresented.

    b.  there has been fraud or false swearing by an insured with respect to this insurance or the subject thereof.

3.  Under Other Conditions, paragraph b. of Suit Against Us is deleted and replaced by the following:

    b.  the suit has been brought within five years after "you" first have knowledge of the loss.


**All terms and conditions of this policy apply unless modified by this endorsement.**


Contains copyrighted material of American Association of Insurance Services.
© American Association of Insurance Services, 2005

IM 2200 06 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDATORY ENDORSEMENT - FUNGUS EXCLUSION
# AND LIMITED COVERAGE DELETED

1. Under Definitions, the definition of "fungus" is deleted.

2. Under Coverage Extensions, the Limited Fungus Coverage Extension is deleted.

3. The following applies to IM 7050, IM 7052, and IM 7053, if applicable:

   Under Supplemental Coverages, Ordinance or Law (Undamaged Parts of a Building) is deleted and replaced as follows:

   **Ordinance Or Law (Undamaged Parts Of A Building)** --

   a. **Coverage** -- When a covered peril occurs to a covered building or structure, "we" pay for the value of undamaged parts of a covered building or structure that is required to be demolished as a result of the enforcement of any ordinance, law, or decree that:

      1) requires the demolition of undamaged parts of a covered building or structure that is damaged or destroyed by a covered peril;
      2) regulates the construction or repair of a building or structure, or establishes building, zoning, or land use requirements at a covered location; and
      3) is in force at the time of loss.

   b. **We Do Not Cover** -- "We" do not cover the costs associated with the enforcement of any ordinance, law, or decree that requires "you" or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of "pollutants".

   c. **Coverage Limitation** -- This coverage is part of and not in addition to the applicable "limit" for coverage described under Property Covered.

4. The following applies to IM 7050, IM 7052, and IM 7053, if applicable:

   Under Supplemental Coverages, Ordinance or Law (Increased Cost To Repair And Cost To Demolish/Clear Site) is deleted and replaced as follows:

   **Ordinance Or Law (Increased Cost To Repair And Cost To Demolish/Clear Site)** --

   a. **Increased Cost To Repair** --

      1) **Coverage** -- When a covered peril occurs to a covered building or structure, "we" cover the increased cost to repair, rebuild, or reconstruct:

         a) damaged portions of a covered building or structure; and
         b) undamaged portions of a covered building or structure whether or not those undamaged portions need to be demolished;

      as a result of the enforcement of building, zoning, or land use ordinance, law, or decree and is in force at the time when a covered peril occurs to a covered building or structure.

      2) **If The Building Is Repaired Or Rebuilt** -- If a covered building or structure is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by building, zoning, or land use ordinance, law, or decree.

IM 2200 06 04     Copyright, American Association of Insurance Services, Inc., 2004     Page 1 of 3

**IM 2200 06 04**

3) **Coverage Limitation** -- "We" do not cover the increased cost of construction until the covered building or structure is actually repaired or replaced and unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

b. **Cost To Demolish And Clear Site** -- "We" cover the cost to demolish and clear the site of undamaged parts of the covered building or structure that is damaged or destroyed by a covered peril. The demolition must be a result of the enforcement of a building, zoning, or land use ordinance, law, or decree that is in force at the time when a covered peril occurs to a covered building or structure.

c. **We Do Not Cover** -- "We" do not cover the costs associated with the enforcement of any ordinance, law, or decree:

1) that requires "you" or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of "pollutants"; or
2) "you" were required to comply with before the covered peril occurred to a covered building or structure, even if the building or structure was undamaged and "you" failed to comply with the ordinance, law, or decree.

d. **What We Pay If The Building Is Repaired Or Replaced** -- If the covered building or structure is repaired or replaced, "we" pay the lesser of:

1) the amount "you" actually spend to demolish and clear the site, plus the actual increased cost to repair, rebuild, or construct the property but not for more than a building or structure of the same height, floor area, and style; or
2) $50,000.

e. **What We Pay If The Building Is Not Repaired Or Replaced** -- If the covered building or structure is not repaired or replaced, "we" pay the lesser of:

1) the amount "you" actually spend to demolish and clear the site; plus the cost "you" would have incurred to replace the damaged or destroyed property with other property:

a) of like kind, and quality;
b) of the same height, floor area, and style; and
c) used for the same purpose; or

2) $50,000.

5. Under Perils Excluded, the Fungus Exclusion is deleted.

6. The following applies to IM 7050, IM 7052, IM 7053, IM 7100, and IM 7101, if applicable:

Under Perils Excluded, the exclusion for Contamination Or Deterioration is deleted and replaced by the following:

**Contamination Or Deterioration** -- "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

But if contamination or deterioration results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

7. The following applies to IM 7051 and IM 7054, if applicable:

Under Perils Excluded, the exclusion for Contamination Or Deterioration is deleted and replaced by the following:

ACP CIMP5995779698                    INSURED                    45   0002645

IM 2200 06 04

**Contamination Or Deterioration** -- "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

8.  The following applies only to IM 7054, if applicable:

    Under Other Coverages, Collapse, paragraph 5., Limited Fungus Coverage Does Not Increase/Decrease Coverage is deleted.

9.  The following applies to IM 7050, IM 7051, IM 7052, IM 7053, IM 7054, IM 7100, and IM 7101, if applicable:

    Under Other Conditions, Restoration Of Limits is deleted and replaced as follows:

    **Restoration Of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limits".

**All terms and conditions of this policy apply unless modified by this endorsement.**

Contains copyrighted material of American Association of Insurance Services.
© American Association of Insurance Services, 2004

ACP CIMP5995779698      INSURED      45   0002646

IM 7500 04 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SCHEDULED PROPERTY FLOATER

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Scheduled Property Floater. This coverage is also subject to the "schedule of coverages" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "schedule of coverages".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the declarations.

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Earth movement" means any movement or vibration of the earth's surface (other than "sinkhole collapse") including but not limited to earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting of earth.

4. "Flood" means flood, surface water, waves, tidal water, or the overflow of a body of water, all whether driven by wind or not. This includes spray that results from these whether driven by wind or not.

5. "Limit" means the amount of coverage that applies.

6. "Pollutant" means:

   a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of; and

   b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

7. "Schedule of coverages" means:

   a. all pages labeled schedule of coverages or schedules that pertain to this coverage; and

   b. declarations or supplemental declarations that pertain to this coverage.

8. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

9. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

   Falling objects does not include loss to:

   a. personal property in the open; or

IM7500 04 04

Page 1 of 11

**IM 7500 04 04**

b.  the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roofs or walls are first damaged by a falling object.

Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

10. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

11. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow.

Volcanic action does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

## PROPERTY COVERED

"We" cover the following property unless the property is excluded or subject to limitations.

1.  **Coverage** -- "We" cover direct physical loss caused by a covered peril to:

    a.  "your" property; or

    b.  property of others in "your" care, custody, and control.

2.  **Coverage Limitation** -- "We" only cover "your" property and property of others that are described on the "schedule of coverages".

## PROPERTY NOT COVERED

1.  **Aircraft Or Watercraft** -- "We" do not cover aircraft or watercraft.

2.  **Buildings And Land** -- "We" do not cover buildings or land including land on which covered property is located.

3.  **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

4.  **Money And Securities** -- "We" do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

5.  **Vehicles** -- "We" do not cover automobiles or any self-propelled vehicles that are designed for highway use.

6.  **Waterborne Property** -- "We" do not cover property while waterborne except while in transit in the custody of a carrier for hire.

## COVERAGE EXTENSIONS

**Provisions That Apply To Coverage Extensions -** - The following Coverage Extensions indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Coverage Extension, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

**IM 7500 04 04**

Unless otherwise indicated, the coverages provided below are part of and not in addition to the applicable "limit" for coverage described under Property Covered.

The "limit" provided under a Coverage Extension cannot be combined or added to the "limit" for any other Coverage Extension or Supplemental Coverage including a Coverage Extension or Supplemental Coverage that is added to this policy by endorsement.

If coinsurance provisions are part of this policy, the following coverage extensions are not subject to and not considered in applying coinsurance conditions.

**Debris Removal** --

1. **Coverage** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril.

2. **We Do Not Cover** -- This coverage does not include costs to:

   a. extract "pollutants" from land or water; or

   b. remove, restore, or replace polluted land or water.

3. **Limit** -- "We" do not pay any more under this coverage than 25% of the amount "we" pay for the direct physical loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

4. **Additional Limit** -- "We" pay up to an additional $5,000 for debris removal expense when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

5. **You Must Report Your Expenses** -- "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

## SUPPLEMENTAL COVERAGES

**Provisions That Apply To Supplemental Coverages** -- The following Supplemental Coverages indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Supplemental Coverage, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, a "limit" for a Supplemental Coverage provided below is separate from, and not part of, the applicable "limit" for coverage described under Property Covered.

The "limit" available for coverage described under a Supplemental Coverage:

a. is the only "limit" available for the described coverage; and

b. is not the sum of the "limit" indicated for a Supplemental Coverage and the "limit" for coverage described under Property Covered.

The "limit" provided under a Supplemental Coverage cannot be combined or added to the "limit" for any other Supplemental Coverage or Coverage Extension including a Supplemental Coverage or Coverage Extension that is added to this policy by endorsement.

**IM 7500 04 04**

If coinsurance provisions are part of this policy, the following supplemental coverages are not subject to and not considered in applying coinsurance conditions.

**Pollutant Cleanup And Removal --**

1. **Coverage** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period.

2. **Time Limitation** -- The expenses to extract "pollutants" are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

3. **We Do Not Cover** -- "We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants".

   However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

4. **Limit --** The most "we" pay for each location is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12-month period of this policy.

---

## PERILS COVERED

"We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

---

## PERILS EXCLUDED

1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

      "We" do cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

   b. **Earth Movement Or Volcanic Eruption --** "We" do not pay for loss caused by any "earth movement" (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano.

      "We" do cover direct loss by fire, explosion, or "volcanic action" resulting from either "earth movement" or eruption, explosion, or effusion of a volcano.

      This exclusion does not apply to covered property while in transit.

   c. **Flood** -- "We" do not pay for loss caused by "flood".

      "We" do cover direct loss by fire, explosion, or sprinkler leakage resulting from "flood".

      This exclusion does not apply to covered property while in transit.

---

d. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

e. **Sewer Backup And Water Below The Surface** -- "We" do not pay for loss caused by:

   1) water that backs up through a sewer or drain; or
   2) water below the surface of the ground, including but not limited to water that exerts pressure on or flows, seeps, or leaks through or into a covered building or structure.

   "We" do cover direct loss by fire, explosion, or theft resulting from either water that backs up through a sewer or drain or water below the surface of the ground.

   This exclusion does not apply to covered property while in transit.

f. **War And Military Action** -- "We" do not pay for loss caused by:

   1) war, including undeclared war or civil war; or
   2) a warlike action by a military force, including action taken to prevent or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
   3) insurrection, rebellion, revolution, or unlawful seizure of power including action taken by governmental authority to prevent or defend against any of these.

With regard to any action that comes within the "terms" of this exclusion and involves nuclear reaction, nuclear radiation, or radioactive contamination, this War And Military Action Exclusion will apply in place of the Nuclear Hazard Exclusion.

2. "We" do not pay for loss or damage that is caused by or results from one or more of the following:

a. **Contamination Or Deterioration** -- "We" do not pay for loss caused by contamination or deterioration including corrosion; decay; fungus; mildew; mold; rot; rust; or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

b. **Criminal, Fraudulent, Dishonest, Or Illegal Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by:

   1) "you";
   2) others who have an interest in the property;
   3) others to whom "you" entrust the property;
   4) "your" partners, officers, directors, trustees, joint venturers, or "your" members or managers if "you" are a limited liability company; or
   5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

   This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

   This exclusion does not apply to covered property in the custody of a carrier for hire.

IM 7500 04 04

c. **Electrical Currents** -- "We" do not pay for loss caused by arcing or by electrical currents other than lightning.

But if arcing or electrical currents other than lightning result in a "specified peril", "we" do cover the loss or damage caused by that "specified peril".

d. **Explosion, Rupture, Or Bursting** -- "We" do not pay for loss caused by explosion, rupture, or bursting of steam boilers, steam or gas turbines, steam pipes, or steam engines. This exclusion applies only to loss or damage to the steam boilers, steam or gas turbines, steam pipes, or steam engines in which the loss occurred.

e. **Loss Of Use** -- "We" do not pay for loss caused by or resulting from loss of use, delay, or loss of market.

f. **Mechanical Breakdown** -- "We" do not pay for loss caused by any mechanical, structural, or electrical breakdown or malfunction including a breakdown or malfunction resulting from a structural, mechanical, or reconditioning process.

g. **Missing Property** -- "We" do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property.

This exclusion does not apply to covered property in the custody of a carrier for hire.

h. **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants":

1) unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril"; or
2) except as specifically provided under the Supplemental Coverages - Pollutant Cleanup and Removal.

"We" do cover any resulting loss caused by a "specified peril".

i. **Temperature/Humidity** -- "We" do not pay for loss caused by dryness, dampness, humidity, or changes in or extremes of temperature.

But if dryness, dampness, humidity, or changes in or extremes of temperature results in a "specified peril", "we" do cover the loss of damage caused by that "specified peril".

j. **Theft From An Unattended Vehicle** -- "We" do not pay for theft from an unattended vehicle except when it is securely locked, its windows are fully closed, and there is visible evidence that entry into the vehicle was forced.

This exclusion does not apply to covered property in the custody of a carrier for hire.

k. **Voluntary Parting** -- "We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

l. **Wear And Tear** -- "We" do not pay for loss caused by wear and tear, marring, or scratching.

## WHAT MUST BE DONE IN CASE OF LOSS

1.  **Notice** -- In case of a loss, "you" must:

    a.  give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

    b.  give notice to the police when the act that causes the loss is a crime.

2.  **You Must Protect Property --** "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.

    a.  **Payment Of Reasonable Costs** -- "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. "Our" payment of reasonable costs does not increase the "limit".

    b.  **We Do Not Pay --** "We" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against.

3.  **Proof Of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

    a.  the time, place, and circumstances of the loss;

    b.  other policies of insurance that may cover the loss;

    c.  "your" interest and the interests of all others in the property involved, including all mortgages and liens;

    d.  changes in title of the covered property during the policy period; and

    e.  estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4.  **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5.  **Records** -- "You" must produce records, including tax returns and bank microfilms of all canceled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6.  **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7.  **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8.  **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9.  **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

INSURED

**IM 7500 04 04**

## VALUATION

1. **Actual Cash Value --**The value of covered property is based on the actual cash value at the time of loss (with a deduction for depreciation).

2. **Pair Or Set** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

3. **Loss To Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

## HOW MUCH WE PAY

1. **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "schedule of coverages" in any one occurrence.

3. **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., 5., and 6. under How Much We Pay, "we" pay the lesser of:

   a. the amount determined under Valuation;

   b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

   c. the "limit" that applies to the covered property.

4. **Coinsurance --**

   a. **When Coinsurance Applies** -- "We" only pay a part of the loss if the "limit" is less than the percentage of the value of the covered property that is indicated on the "schedule of coverages".

   b. **How We Determine Our Part Of The Loss** -- "Our" part of the loss is determined using the following steps:

      1) multiply the percent indicated on the "schedule of coverages" by the value of the covered property at the time of loss;
      2) divide the "limit" for covered property by the result determined in b.1) above;
      3) multiply the total amount of loss, after the application of any deductible, by the result determined in b.2) above.

      The most "we" pay is the amount determined in b.3) above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

   c. **If There Is More Than One Limit** -- If there is more than one "limit" indicated on the "schedule of coverages" for this coverage part, this procedure applies separately to each "limit".

   d. **If There Is Only One Limit** -- If there is only one "limit" indicated on the "schedule of coverages" for this coverage, this procedure applies to the total of all covered property to which the "limit" applies.

   e. **When Coinsurance Does Not Apply --** Conditions for coinsurance do not apply unless a coinsurance percentage is indicated on the "schedule of coverages".

ACP CIMP5995779698                        INSURED                        45   0002654

5. **Insurance Under More Than One Coverage --** If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

6. **Insurance Under More Than One Policy --**

   a. **Proportional Share --** "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

   b. **Excess Amount --** If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

---

**LOSS PAYMENT**

---

1. **Loss Payment Options --**

   a. **Our Options --** In the event of loss covered by this coverage form, "we" have the following options:

      1) pay the value of the lost or damaged property;
      2) pay the cost of repairing or replacing the lost or damaged property;
      3) rebuild, repair, or replace the property with other property of equivalent kind and quality, to the extent practicable, within a reasonable time; or
      4) take all or any part of the property at the agreed or appraised value.

   b. **Notice Of Our Intent To Rebuild, Repair, Or Replace --** "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses --**

   a. **Adjustment And Payment Of Loss --** "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy.

   b. **Conditions For Payment Of Loss --** An insured loss will be payable 30 days after:

      1) a satisfactory proof of loss is received, and
      2) the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3. **Property Of Others --**

   a. **Adjustment And Payment Of Loss To Property Of Others --** Losses to property of others may be adjusted with and paid to:

      1) "you" on behalf of the owner; or
      2) the owner.

   b. **We Do Not Have To Pay You If We Pay The Owner --** If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits brought by the owners at "our" expense.

IM 7500 04 04

## OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers will then determine and state separately the amount of each loss.

   The appraisers will also determine the value of covered property items at the time of the loss, if requested.

   If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three, sets the amount of the loss.

   Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Benefit To Others** -- Insurance under this coverage will not directly or indirectly benefit anyone having custody of "your" property.

3. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates** -- This provision applies only if the insured is an individual.

   a. **Your Death** -- On "your" death, "we" cover the following as an insured:

      1) the person who has custody of "your" property until a legal representative is qualified and appointed; or
      2) "your" legal representative.

      This person or organization is an insured only with respect to property covered by this coverage.

   b. **Policy Period Is Not Extended** -- This coverage does not extend past the policy period indicated on the declarations.

5. **Misrepresentation, Concealment, Or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "you" or any other insured have willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) "your" interest herein; or

   b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

IM7500 04 04

7. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "you" must notify "us" promptly if "you" recover property or receive payment;

   b. "we" must notify "you" promptly if "we" recover property or receive payment;

   c. any recovery expenses incurred by either are reimbursed first;

   d. "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

   e. if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

8. **Restoration Of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limits".

9. **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

   "You" may waive "your" right to recover from others in writing before a loss occurs.

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

    a. all of the "terms" of this coverage have been complied with; and

    b. the suit has been brought within two years after "you" first have knowledge of the loss.

       If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** -- "We" cover property while it is in the United States of America, its territories and possessions, Canada, and Puerto Rico.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Contains copyrighted material of American Association of Insurance Services.
© American Association of Insurance Services, 2004

IM7506 04 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SCHEDULE OF COVERAGES
## SCHEDULED PROPERTY FLOATER

(The entries required to complete this schedule
will be shown below or on the "schedule of coverages".)

## COVERED PROPERTY

| Item No. | DESCRIBED PROPERTY | Limit |
|---|---|---|
| 001 | VARIOUS FURNITURE & | |
| | HOUSEHOLD FURNISHING | |
| | ITEMS | $ 375,000 |
| | | |
| | | |
| | | $ |
| | | |
| | | |
| | | $ |
| | | |
| | | |
| | | $ |

**COVERAGE EXTENSIONS**

Additional Debris Removal Expenses          $

**SUPPLEMENTAL COVERAGES**

Pollutant Cleanup And Removal          $

**IM7506 04 04**                                        **Page 1 of 2**

**IM 7506 04 04**

## DEDUCTIBLE AND COINSURANCE

**DEDUCTIBLE**

Deductible Amount                                      $ **1,000**

**COINSURANCE**

[ ]        Not Applicable

[ ]        100%____        90% **X**____        80%____              ____%____

**OPTIONAL COVERAGES AND ENDORSEMENTS**

_____

_____

_____

_____

_____

_____

_____

_____

**All terms and conditions of this policy apply unless modified by this endorsement.**
Contains copyrighted material of American Association of Insurance Services.
© American Association of Insurance Services, 2004

ACP CIMP5995779698                              INSURED                                      45   0002659



# INVOICE

Dupre' Logistics LLC

337.237.8471

SCAC: DUPR   FEIN: 72-0878543

Invoice Number: SO3764467

| Invoice Number | Invoice Date | Due Date | Customer Load Reference | Invoice Sequence | Pay Terms |
|---|---|---|---|---|---|
| SO3764467 | 11/30/2022 | 30 Days | CIN33299? | Original | PREPAID |

| Bill To: | Remit To: |
|---|---|
| 114863<br>JAMES MICHAEL HOWARD, INC<br>4128 HERSCHEL ST<br>4128 HERSCHEL ST<br>JACKSONVILLE, FL 32210 | DUPRE LOGISTICS LLC<br>DEPT AT 952611<br>ATLANTA, GA 31192-2611 |

| Shipment Information | |
|---|---|
| **Origin** | **Destination** |
| JAMES MICHAEL HOWARD MAIN WAREHOUSE<br>5343 NORMANDY BLVD<br>JACKSONVILLE, FL 32205<br>USA | ROBBINS RESIDENCE<br>509 CAPTAINS NECK LANE<br>SOUTHAMPTON, NY 11968<br>USA |

| Additional Stops |
|---|
| PICKUP: JACKSONVILLE, FL |
| DROP: SOUTHAMPTON, NY |

| Mode | Total Miles |
|---|---|
| TRUCKLOAD | 1027.0 |

| Additional References |
|---|
| EQUIPMENT:<br>Van (TF)<br><br>BOL:  JamesMH2<br><br>HAZMAT:  NON-HAZ |

| Description | Quantity | Type | Weight | Units |
|---|---|---|---|---|
| GENERAL COMMODITIES | 1.0 | PCS | 9500.0 | lb |

| Charges | | | | |
|---|---|---|---|---|
| Description | Rate | Qualifier | Quantity | Amount |
| TOTAL LINE HAUL | 2700.0 | FLAT RATE | | $2,700.00 |
| | | | **Pay This Amount:** | $2,700.00 |

11/25/22, 11:25 AM                              Bill of Lading Form | Printable Template

# Bill of Lading

**Ship From:**
JAMES MICHAEL HOWARD
5343 NORMANDY BLVD UNIT 101
JACKSONVILLE FL 32205
904-387-5234

SID#:                                    ☐ FOB

**Ship To:**                Location No:

ROBBINS RESIDENCE
509 CAPTAINS NECK
SOUTHAMPTON, NY
904-352-3468

CID#:                                    ☐ FOB

**Third Party Freight Charges - Bill To:**

**Special Instructions:**
DELIVER DIRECTLY TO HOUSE 11/27/22

Date: 25-November-2022

Bill of Lading No: 0012345

**BARCODE SPACE**

Carrier Name:
Trailer No:
Seal Number(s):

SCAC:
Pro No:

**BARCODE SPACE**

**Freight Charge Terms (prepaid unless marked otherwise)**
☐ Prepaid      ☐ Collect      ☐ 3rd Party
☐ Master BOL: w/attached underlying BOLs

| Customer Order No. | # Pkgs. | Weight | Pallet/Slip (Y/N) | Additional Shipper Info |
|---|---|---|---|---|
| | | | | |

**Totals**

| Handling Unit | | Package | | | | Commodity Description | LTL Only | |
|---|---|---|---|---|---|---|---|---|
| QTY | TYPE | QTY | TYPE | Weight | H.M. (X) | Commodities requiring special or additional care or attention in handling or stowing must be so marked and packaged as to ensure safe transportation with ordinary care. See Section 2(e) of NMMFC Item 360 | NMFC No. | Class |
| TRUCKFULL | FULL | FULL | | | | FULL TRUCKLOAD VW BUNK BEDS PIECES, ALL FINISHED WOOD | | |

Arrival time 9:00 am.
Departure Time 6:00 pm

**Totals**

Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property as follows:
"The agreed or declared value of the property is specifically stated by the shipper to be not exceeding

_____ FOB _____

COD Amt. $_____

Fee Terms: ☐ Collect ☐ Prepaid
☐ Customer Check Acceptable

NOTE: Liability Limitation for loss or damage in this shipment may be applicable. See 49 U.S.C. · 14706(c)(1)(A) and (B).

RECEIVED, subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to the rates, classifications and rules that have been established by the carrier and are available to the shipper, on request, and to all applicable state and federal regulations.

The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

Shipper Signature_____

This is to certify that the above named materials are properly classified, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the DOT.

**Trailer Loaded**
☐ By Shipper
☐ By Driver

**Freight Counted**
☐ By Shipper
☐ By Driver/pallets said to contain
☐ By Driver/Pieces

Carrier acknowledges receipt of packages and required placards. Carrier certifies emergency response information was made available and/or carrier has the DOT emergency response guidebook or equivalent documentation in the vehicle. Property described above is received in good order, except as noted.

Shipper Signature _____ 11/25/22          Carrier Signature _____ Pickup Date _____

Paul guru 11/27/22
Hali Johnson

# Bill of Lading

Bill of Lading Form | Printable Template

**Ship From:**
JAMES MICHAEL HOWARD
8343 NORMANDY BLVD UNIT 101
JACKSONVILLE FL 32205
90436/5294

SID# ☐ FOB

**Ship To:**      Location No.

ROBBINS RESIDENCE
509 CAPTAINS NECK LN
SOUTHAMPTON NY 11968
9043523468

CID# ☐ FOB

**Third Party Freight Charges - Bill To:**

Date: 29-November-2022

Bill of Lading No: 00012378

BARCODE SPACE

Carrier Name:
Trailer No:
Seal Number(s):
SCAC:
Pro No:

BARCODE SPACE

**Freight Charge Terms** (prepaid unless marked otherwise)
☐ Prepaid   ☐ Collect   ☐ 3rd Party
☐ Master BOL w/attached underlying BOLs

**Special Instructions**
-9

| Customer Order No. | # Pkgs. | Weight | Pallet/Slip (Y/N) | Additional Shipper Info |
|---|---|---|---|---|

## Totals

| Handling Unit | | Package | | | | Commodity Description | LTL Only | |
|---|---|---|---|---|---|---|---|---|
| QTY | TYPE | QTY | TYPE | Weight | H.M. (X) | Commodities requiring special or additional care or attention in handling or stowing must be so marked and packaged as to ensure safe transportation with ordinary care. See Section 2(e) of NMFC Item 360 | NMFC No. | Class |
| FULL | LOAD | FULL | LOAD | | | FULL TRUCK LOAD BUNK BED PARTS FINISHED WOOD | | |

*Hall Johnson  James M Howard*
*Major Damage on delivery rolling up lawn truck hit low bridge*

### Totals

COD Amt. $

Fee Terms: ☐ Collect ☐ Prepaid
☐ Customer Check Acceptable

**NOTE:** Liability Limitation for loss or damage in this shipment may be applicable. See 49 U.S.C. - 14706(c)(1)(A) and (B).

RECEIVED, subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to the rates, classifications and rules that have been established by the carrier and are available to the shipper, on request, and to all applicable state and federal regulations.

The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

Shipper Signature

This is to certify that the above named materials are properly classified, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the DOT.

| Trailer loaded | Freight Counted |
|---|---|
| ☑ By Shipper | ☑ By Shipper |
| ☐ By Driver | ☐ By Driver/pallets said to contain |
| | ☐ By Driver/Pieces |

Carrier acknowledges receipt of packages and required placards. Carrier certifies emergency response information was made available and/or carrier has the DOT emergency response guidebook or equivalent documentation in the vehicle. Property described above is received in good order, except as noted.

Shipper Signature        Date

*Stephen McAvoy  11-29-22*