# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ALLIED PROPERTY AND
CASUALTY INSURANCE
COMPANY,

      Plaintiff,

v.                                        Case No.  3:24-cv-46-MMH-PDB

DUPRE LOGISTICS, LLC,
and V&M TRANSPORT,

      Defendants.

_____

## <u>ORDER</u>

**THIS CAUSE** is before the Court on Defendant Dupre Logistics, LLC's

Motion to Dismiss Plaintiff's Complaint (Doc. 10; Motion), filed on January 19,

2024. In the Motion, Dupre seeks dismissal of all claims set forth in Plaintiff

Allied Property and Casualty Insurance Company's Complaint and Demand for

Jury Trial (Doc. 4; Complaint), filed on January 17, 2024. Allied filed a response,

<u>see</u> Plaintiff's Response to Defendant Dupre Logistics, LLC's Motion to Dismiss

Plaintiff's Complaint (Doc. 16; Response), filed on February 1, 2024,[1] and with leave of the Court, Dupre filed a reply, see Defendant Dupre Logistics, LLC's Reply in Support of its Motion to Dismiss Plaintiff's Complaint (Doc. 25; Reply), filed on March 12, 2024. Allied also filed supplemental authority, see Plaintiff's Notice of Filing Supplemental Authority (Doc. 26; Supplement), filed on April 23, 2024, to which Dupre responded, see Defendant Dupre Logistics, LLC's Response to Plaintiff's Notice of Filing Supplemental Authority (Doc. 27; Supplement Response), filed on April 24, 2024.[2] Accordingly, this matter is ripe for review.

## I.    Standard of Review

In ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 & n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th

---

[1] In the Response, Allied alternatively requested leave to amend its Complaint. The Court denied this request without prejudice to the filing of a proper motion. See Order (Doc. 35) at 3, entered on May 28, 2024. Allied has not moved to amend the Complaint.

[2] The filing of Dupre's Supplement Response was improper. The Court's Local Rules do not authorize the filing of a response to a Notice of Supplemental Authority. See Rule 3.01(i), Local Rules of the United States District Court for the Middle District of Florida. Nevertheless, in this instance, in an abundance of caution, the Court will consider the arguments raised in the Supplement Response. But the Court advises the parties that future unauthorized filings will be stricken.

Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to

[an] assumption of truth." <u>See</u> <u>Iqbal</u>, 556 U.S. at 679. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

## II.    Background[3]

James Michael Howard, Inc. ("Howard") is an interior design company located in Jacksonville, Florida. Complaint ¶¶ 2, 10. In November of 2022, Howard and Dupre "entered into an agreement" for Dupre to "arrange the transportation" of a shipment of "Howard's custom built bunk beds" from Jacksonville to Howard's customer in New York. <u>Id.</u> ¶ 10. Dupre provided Howard an invoice for the shipment showing the origin of the shipment, its destination, the cost, and Dupre' Logistics as the entity being compensated for the transportation of the shipment. <u>Id.</u> Ex. B. Dupre subcontracted with Defendant V&M Transport "to serve as Motor Carrier to provide the transportation service to Howard." <u>Id.</u> ¶ 10. Dupre "and/or" V&M accepted the beds "in good order and condition." <u>Id.</u> ¶ 11. But while en route, the delivery truck hit a bridge, damaging the truck, exposing the beds to the elements, and

---

[3] In considering the Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Allied, and accept all reasonable inferences that can be drawn from such allegations. <u>See</u> <u>Hill v. White</u>, 321 F.3d 1334, 1335 (11th Cir. 2003); <u>Jackson v. Okaloosa County</u>, 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint and may well differ from those that ultimately can be proved.

resulting in extensive damage to the custom-built beds. Id. ¶ 12. At the time of delivery, the shipment was rejected. Id. According to Allied, "the cargo was not delivered in good order and condition in breach of contract [of] carriage for the shipment." Id. ¶ 13. Bills of lading for the shipment were produced at pickup and delivery. Id. Ex. C. In November of 2022, "a claim for loss and damage … was delivered to Dupre and V&M," which made "a claim for payment." Id. ¶ 14. In May of 2023, "Dupre denied liability and declined to pay." Id. ¶ 15. V&M "has failed to acknowledge the claim" and "failed to decline, pay, or offer a written settlement compromise." Id. ¶ 16.

Allied is Howard's insurer and subrogee. Id. ¶¶ 5, 6, 46, 48. As Howard's insurer and "[a]s a result of" the damage to the beds, Allied paid Howard $77,600. Id. ¶ 47. As Howard's subrogee, Allied sued Dupre and V&M in state court. Notice of Removal ¶ 1 (Doc. 1; Removal), filed January 12, 2024. Dupre removed the action to this Court. Id.

Allied brings three claims against Dupre. See Complaint at 6–9. In Count IV, Allied asserts a claim that Dupre is liable as a motor carrier under the Carmack Amendment, 49 U.S.C. § 14706. Id. at 6–7. In Count V, Allied brings claims for negligence, including a breach of duty in "allowing" the beds "to become damaged in transit when the truck ran into a low lying bridge, tearing off the top of the truck, allowing debris and moisture to penetrate the cargo during the delivery resulting in unacceptable damage and rejection of the load,"

id. ¶ 52; a breach of duty in "fail[ing] to employ agents, servants, and/or employees with proper knowledge, training, and experience to perform the delivery," id. ¶ 53; and a breach of duty in "fail[ing] to adequately supervise and inspect the work performed by its contractors, employees, and/or agents for the delivery," id. ¶ 54. And in Count VI, Allied brings a claim for equitable subrogation. Id. at 8.[4]

### III.   Discussion

#### A.   Summary

Under Rule 12(b)(6), Dupre moves to dismiss the claims against it, arguing the claims are preempted by the Federal Aviation Administration Authorization Act (FAAAA), 49 U.S.C. § 14501(b) & (c)(1), and the Carmack Amendment, 49 U.S.C. § 14706. See Motion at 1. Notably, the parties agree that the scope of preemption under the FAAAA and the Carmack Amendment depends, in part, on whether Dupre's role in the transaction is that of a motor carrier or a broker. See generally Motion; Response; Reply. Dupre maintains that it acted as a broker, in which case Allied's claim under the Carmack Amendment (Count IV) would be unavailable, and further contends that Allied's

---

[4] Allied brings identical claims against V&M. See Complaint at 4–6. After Allied properly served V&M, V&M failed to appear. See Order (Doc. 31) at 1, entered on May 16, 2024. As a result, the Court entered a default against V&M for the claims against it. Id. at 2. The Court also extended the deadline for Allied to move for default judgment against V&M to 14 days after resolution of the claims against Dupre. Id.

other claims are preempted by the FAAAA. <u>See</u> Motion at 6–14. Allied responds that Dupre's status as a broker or a motor carrier cannot be resolved at the motion to dismiss stage, that the state law claims must be permitted to proceed because the Carmack Amendment claim is pled in the alternative to these claims, and that the FAAAA does not preempt these state-law claims. <u>See</u> Response at 4–14. Allied also acknowledges that the Carmack Amendment "preempts state law claims" against motor carriers. Response at 4.

In the analysis that follows, the Court considers the arguments relevant to each Count in turn. As to Count IV—the Carmack Amendment claim—the Court determines that the outcome of this claim depends on Dupre's status as a motor carrier or broker and concludes that Dupre's status cannot be resolved at this stage of the proceedings. As such, the Motion is due to be denied as to Count IV. As to Counts V and VI—the negligence claims and the claim for equitable subrogation—considering the parties' agreement that the Carmack Amendment would preempt these claims if Dupre is a motor carrier, the Court analyzes whether the FAAAA preempts these specific claims when brought against a broker. The Court concludes that the motion is due to be granted as to Count V and denied as to Count VI.

B.     Count IV (the Carmack Amendment)

Dupre argues that the claim in Count IV—the Carmack Amendment claim—must be dismissed for failure to state a claim because "Dupre's actions as a broker are the basis for Plaintiff's alleged claims," and the Carmack Amendment does not apply to brokers. Motion at 12. Allied responds that "[i]t would be premature to find Dupre acted as a 'broker' as a matter of law" and points to its allegations in the Complaint that support a claim that Dupre acted as a motor carrier. Response at 7–10. For the reasons that follow, the Motion is due to be denied as to Count IV because Allied has properly pled Count IV in the alternative to the claims against Dupre as a broker that it pleads in Counts V and VI, and because Allied presents sufficient allegations in the Complaint to support a reasonable inference that Dupre acted as a motor carrier.

Congress has passed various laws affecting the interstate trucking industry, including the FAAAA and Carmack Amendment provisions at issue in this case. See generally Dan's City Used Cars, Inc. v. Pelkey, 569 U.S. 251, 256 (2013) (describing the history and enactment of the FAAAA); UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc., 750 F.3d 1282, 1285–86 (11th Cir. 2014) (describing the purpose and operation of the Carmack Amendment). Through this regulatory framework, Congress classifies market participants based on their role in each individual shipping transaction. See 49 U.S.C. § 13102 (providing definitions for various terms appearing in both the FAAAA and the

Carmack Amendment, including terms describing actors in the trucking industry). As the Eleventh Circuit has explained:

> The domestic trucking industry consists of several players, including the shipper, the broker, and the motor carrier. The shipper is the "person who ... owns the goods being transported"—like a manufacturer, retailer, or distributor. <u>See</u> 49 U.S.C. § 13102(13) (defining "individual shipper"). The motor carrier is the truck driver—the person who transports the goods from the shipper to the purchaser. <u>See</u> <u>id.</u> § 13102(14) (defining "motor carrier"). The broker is the person who connects the shipper and carrier; he acts as the middleman between the two to arrange for the transportation of the shipper's goods by the carrier by, for instance, negotiating rates and routes. <u>See</u> <u>id.</u> § 13102(2) (defining "broker"); 49 C.F.R. § 371.2(a) (same).

<u>Aspen Am. Ins. Co. v. Landstar Ranger</u>, 65 F.4th 1262, 1264–65 (11th Cir. 2023).

With respect to motor carriers, "[t]he Carmack Amendment [to the Interstate Commerce Act] was adopted to achieve uniformity in rules governing interstate shipments, including the rules governing injury or loss to property shipped." <u>UPS Supply Chain Sols.</u>, 750 F.3d at 1285. It "is a strict liability statute" which creates "a prima facie presumption of liability" when shipped goods are lost or damaged while in the possession of a motor carrier. <u>See</u> <u>id.</u> at 1285–86. It also preempts state-law claims against the motor carrier, replacing those claims with its strict liability provision. <u>Essex Ins. Co. v. Barrett Moving & Storage, Inc.</u>, 885 F.3d 1292, 1300 (11th Cir. 2018). Notably, however, the Carmack Amendment "does not apply to brokers, which are purposefully distinguished from motor carriers throughout the" Interstate Commerce Act. <u>Id.</u>

In considering whether summary judgment was appropriate in a Carmack Amendment case, the Eleventh Circuit observed that determining whether a party acted as a broker or a motor carrier is an "inherently fact-intensive" inquiry.[5] See Essex, 885 F.3d at 1302 (quoting Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc., No. 09 Civ. 2365 (PGG), 2011 WL 671747, at *5 (S.D.N.Y. Feb. 18, 2011)). Indeed, the court explained that a motor carrier need not be the entity that actually transported the shipment. See id. at 1301 (explaining that the Carmack Amendment "tracks longstanding common-law rules," including "the commonsense proposition that when a party holds itself out as the party responsible for the care and delivery of another's property, it cannot outsource its contractual responsibility by outsourcing the care and delivery it agreed to provide"). In addition, multiple motor carriers can be responsible for the same shipment. See 49 U.S.C. § 14706(a)(1) ("[t]hat carrier and any other carrier … are liable" (emphasis added)); Ever Better Eating, Inc. v. Jama's Express LLC, No. 8:21-cv-1798-CEH-CPT, 2022 WL 17782391, at *8

---

[5] For this same reason, at least one court has observed that the inquiry is often "not appropriate for resolution on a motion to dismiss." See Swenson v. Alliance Moving & Storage LLC, No. 21-cv-01968-CMA-STV, 2022 WL 1508506, at *7 (D. Colo. Apr. 26, 2022) (citing Essex, 885 F.3d at 1302), report and recommendation adopted, 2022 WL 1500778, at *1 (D. Colo. May 12, 2022).

The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

(M.D. Fla. Dec. 19, 2022) ("[T]he existence of one carrier does not preclude the liability of other carriers, because the Carmack Amendment expressly provides for the liability of more than one carrier.").

In <u>Essex</u>, the Eleventh Circuit discussed the distinction between a motor carrier and a broker. 885 F.3d at 1300–02. The court explained that under the Interstate Commerce Act, a broker is "'a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.'" <u>Id.</u> at 1300 (quoting 49 U.S.C. § 13102(2)). In contrast, an entity is a motor carrier if it is "'providing motor vehicle transportation for compensation.'" <u>Id.</u> (quoting 49 U.S.C. § 13102(14)). The "key distinction" between a broker and a motor carrier is "whether the disputed party accepted legal responsibility to transport the shipment." <u>Id.</u> at 1300–01. For this reason, "a party is not a broker under the Carmack Amendment if it has agreed with the shipper to accept legal responsibility for that shipment." <u>Id.</u> at 1301; <u>accord</u> <u>Tryg Ins. v. C.H. Robinson Worldwide, Inc.</u>, 767 F. App'x 284, 287 (3d Cir. 2019) ("If an entity accepts responsibility for ensuring the delivery of goods, then that entity qualifies as a carrier regardless of whether it conducted the physical transportation." (citing <u>Essex</u>, 885 F.3d at 1301)). While a party "can insulate itself from strict liability … if it makes clear in writing that it is merely acting

as a go-between to connect the shipper" with a motor carrier, "[w]here no such writing exists, the question will depend on how the party held itself out to the world, the nature of the party's communications and prior dealings with the shipper, and the parties' understanding as to who would assume responsibility for the delivery of the shipment in question." <u>Essex</u>, 885 F.3d at 1302. As the Eleventh Circuit instructed in <u>Essex</u>, "the operative inquiry is this: pursuant to the parties' agreement, with whom did the shipper entrust the cargo?" <u>Id.</u>

Here, as a preliminary matter, the Court notes that the Rules allow Allied to plead alternative claims, even if the claims are inconsistent with each other. Rule 8(d). "If a party makes alternative statements, the pleading is sufficient if one of them is sufficient." Rule 8(d)(3). Therefore, whether Dupre can be both a motor carrier and a broker as to the shipment at issue is irrelevant. If the factual allegations supporting each claim are sufficient, Allied can allege both that Dupre was a motor carrier and that Dupre was a broker.

Dupre does not dispute—rather, it asserts—that in the Complaint Allied alleges Dupre acted as a broker in this transaction. <u>See</u> Motion at 12. As such, the Court accepts that Allied alleges sufficient facts to support a reasonable inference that Dupre acted as a broker. The question for purposes of the Carmack Amendment claim in Count IV is whether Allied alleges sufficient facts to support a plausible alternative claim that Dupre acted as a motor carrier in the transaction.

To resolve this question, the Court must determine whether Allied's allegations support a reasonable inference that Dupre "accepted legal responsibility to transport the shipment." See Essex, 885 F.3d at 1301. In the Complaint, Allied alleges that Dupre "is listed as an active 'carrier/cargo tank/broker' with the [Federal Motor Carrier Safety Administration] … ." Complaint ¶ 3. Allied further alleges that the beds were "accepted by Dupre and/or V&M … in accordance with the agreement and as agreed in the Bill of Lading." Id. ¶ 11. The Bill of Lading does not identify the motor carrier. See id. at 47.[6] However, Allied attaches to the Complaint as an exhibit an "Invoice" from "Dupre' Logistics," in which Dupre billed Howard $2,700 for the truckload shipment from Florida to New York. Id. at 46. The Court must accept Allied's factual allegations as true at this stage in the litigation, and they plausibly show that Howard entrusted the shipment to Dupre, and that Dupre accepted legal responsibility for the shipment. Thus, Allied has alleged sufficient facts to support a reasonable inference that Dupre acted as a motor carrier under the Carmack Amendment for purposes of this shipment.[7]

---

[6] On a motion to dismiss, the Court's consideration is limited to those facts contained in the complaint and the attached exhibits. Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1199 (11th Cir. 2007). Under Rule 10(c), "attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion." Solis-Ramirez v. U.S. Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985); see also Fed. R. Civ. P. 10(c) (the exhibits are part of the pleading "for all purposes"). Additionally, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." Griffin Inds., 496 F.3d at 1206.

[7] Allied also asks the Court to take judicial notice of photos and statements found on Dupre's website and on the Federal Motor Carrier Safety Administration website. Because the

Dupre's arguments to the contrary are unavailing. Dupre characterizes Allied's allegation that "Howard and Dupre entered into an agreement wherein Dupre would arrange the transportation" of the bunk beds as a "clear allegation that Dupre acted as a broker, not a motor carrier … ." Motion at 12 (emphasis omitted). But the Court is required to view this allegation in the light most favorable to Allied. When viewed in this manner, the allegation that Dupre "would arrange" transportation could support an inference that Dupre would accept legal responsibility for the shipment (making Dupre a motor carrier). Indeed, a motor carrier may subcontract the transportation of goods without losing its motor carrier status. See Essex, 885 F.3d at 1301 (explaining that the Carmack Amendment leaves unchanged the common-law rule that "when a party holds itself out as the party responsible for the care and delivery of another's property, it cannot outsource its contractual responsibility by outsourcing the care and delivery it agreed to provide"). In any event, even if this allegation would support a finding that Dupre acted as a broker, other allegations, if true—in particular, the Invoice—would support a finding that Dupre accepted responsibility for the shipment, and, as such, acted as a motor

---

allegations within the Complaint suffice to support a reasonable inference that Dupre acted as a motor carrier, the Court declines to take judicial notice of facts outside the Complaint at this time.

carrier. Because Rule 8(d) permits alternative pleading, this single allegation is not dispositive.

Here, Allied has plausibly alleged that Dupre acted as a motor carrier. Thus, the Motion is due to be denied as to the claim in Count IV.

C.    Count V (Negligence)

As to the claims in Counts V and VI, Allied acknowledges that the Carmack Amendment "preempts state law claims" against motor carriers. Response at 4. But, Allied argues that Count V—the state-law negligence claims—should not be dismissed because if Dupre acted as a broker, neither the Carmack Amendment nor the FAAAA will preempt those claims. See Response at 4. For the reasons that follow, the Court concludes the Motion is due to be granted as to the claims in Count V because the FAAAA preempts the specific claims Allied brings.

In a recent FAAAA case, the Eleventh Circuit explained:

The Supremacy Clause of the United States Constitution preempts—that is, invalidates—state laws that interfere with, or are contrary to federal law. We recognize three types of federal preemption: express preemption, field preemption, and conflict preemption. Express preemption, the only category at issue here, occurs when Congress displaces state law by so stating in express terms. In such a case, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.

<u>Aspen</u>, 65 F.4th at 1266 (internal quotation marks, authority, and footnote omitted). In enacting the FAAAA Congress completed the "deregulation [of] the trucking industry" by "expressly preempting state trucking regulation … upon finding that state governance of intrastate transportation of property had become unreasonably burdensome to free trade, interstate commerce, and American consumers." <u>Dan's City</u>, 569 U.S. at 256 (cleaned up). Describing the Airline Deregulation Act (the statute Congress copied to create the FAAAA), the Supreme Court characterized "Congress' overarching goal as helping ensure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces,' thereby stimulating 'efficiency, innovation, and low prices,' as well as 'variety' and 'quality.'" <u>Rowe v. New Hampshire Motor Transp.</u> <u>Ass'n</u>, 552 U.S. 364, 371 (2008) (quoting <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374, 378 (1992)).

The FAAAA's preemption provision is codified at 49 U.S.C. § 14501(c)(1), which states in relevant part:

> [A] State … may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or <u>service</u> of any motor <u>carrier</u> … or any motor private carrier, <u>broker</u>, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1) (emphasis added). Interpreting the FAAAA, the Supreme Court in <u>Rowe</u> held that "a state law is 'related to' rates, routes, or services if the law has 'a connection with, or reference to' them." <u>Aspen</u>, 65 F.4th

at 1267 (quoting <u>Rowe</u>, 552 U.S. at 370). "Even if the connection 'is only indirect,' preemption will follow, so long as the connection is not 'too tenuous, remote, or peripheral.'" <u>Id.</u> (quoting <u>Rowe</u>, 552 U.S. at 370). Still, the FAAAA "will not bar state-law claims that relate to" a motor carrier or "broker's services 'in any capacity'—only those services that are 'with respect to the transportation of property.'" <u>Id.</u> (quoting <u>Dan's City</u>, 569 U.S. at 261; 49 U.S.C. § 14501(c)(1)). "The Act defines 'transportation' to include 'services related to' 'the movement of … property,' 'including arranging for, receipt, delivery, elevation, transfer in transit, … and interchange of … property.'" <u>Id.</u> (quoting 49 U.S.C. § 13102(23)) (omissions in original). Last, the FAAAA will not preempt state laws "that regulate brokers 'only in their capacity as members of the public.'" <u>Id.</u> at 1268 (quoting <u>Rowe</u>, 552 U.S. at 375).

Notably, even if FAAAA preemption applies, a state law will still be enforced if it comes within the ambit of one of the FAAAA's exceptions. The FAAAA specifically "exempts certain measures from its preemptive scope, including state laws regulating motor vehicle safety, size, and weight; motor carrier insurance; and the intrastate transportation of household goods." <u>Dan's City</u>, 569 U.S. at 256 (citing 49 U.S.C. § 14501(c)(2)(A)–(B)). The first exception is known as the "safety exception." <u>See, e.g.</u>, <u>Aspen</u>, 65 F.4th at 1268.

In <u>Aspen</u>, the Eleventh Circuit considered whether the FAAAA "bars Florida negligence claims against a transportation broker based on the broker's

selection of a motor carrier and, if it does, whether the Act's 'safety exception' allows those claims to proceed." 65 F.4th at 1264. The court held that the FAAAA does preempt a negligent-selection claim, explaining that "the text of the FAAAA makes plain that Aspen's negligence claims relate to a broker's services with respect to the transportation of property." Id. at 1267. The court continued:

> [The plaintiffs] assert specific allegations of negligence and gross negligence against a transportation broker for its selection of a motor carrier to transport property in interstate commerce. This application of the negligence standard would regulate brokers, not "in their capacity as members of the public," but in the performance of their core transportation-related services.

Id. at 1268. Thus, in keeping with the approach of other courts,[8] the court held that the preemption analysis turned on the specific allegations in the plaintiff's

---

[8] See, e.g., Ye v. GlobalTranz Enterprises, Inc., 74 F.4th 453, 459 (7th Cir. 2023) ("Nothing in Illinois tort law expressly refers to broker services. Rather, [the plaintiff] roots her claim in a theory of negligent hiring more generally. Our focus must therefore be on whether [the plaintiff's] proposed enforcement of Illinois's common law of negligence would have a significant economic effect on broker services."). Volkova v. C.H. Robinson Company, No. 16 C 1883, 2018 WL 741441, at *2–4 (N.D. Ill. Feb. 7, 2018) ("[T]he Court must examine the underlying facts of each case to determine whether the particular claims at issue relate to [broker] rates, routes or services. … A straightforward reading of Plaintiff's allegations demonstrates that the negligent hiring claims relate to the core service provided by [the broker] … .") (internal citations omitted); Loyd v. Salazar, 416 F. Supp. 3d 1290, 1297–98 (W.D. Okla. 2019) (holding plaintiff's negligent hiring claims preempted by §14501(c) because "Plaintiff's allegations directly relate to the services AGS provided as broker in the transportation of property."); Krauss v. Iris USA, Inc., No. 17-778, 2018 WL 2063839, at *1–2, 5 (E.D. Penn. May 3, 2018) ("[T]he negligent hiring claim … is that [the plaintiff's] injuries directly flowed from [the broker's] failure to vet freight carrier KV Load. The claim therefore relates to the core service provided by [the broker] … and will therefore have a significant economic impact on the broker's services … therefore the Court concludes it is preempted.") (internal citations omitted).

complaint and the specific causes of action asserted in relation to the role the defendant allegedly played in the transaction. And, because the plaintiff's claims were premised on Aspen's actions "in the performance of [its] core transportation-related services," not its role as a member of the general public, the court determined FAAAA preemption would apply absent an applicable exception. Id.

Turning to the safety exception, the Aspen court identified two statutory elements: first, "the negligence standard must constitute an exercise of [the state's] 'safety regulatory authority,'" and second, "the authority must have been exercised 'with respect to motor vehicles.'" Id. (quoting 49 U.S.C. § 14501(c)(2)(A)). To satisfy the second requirement, the law must have "a direct relationship to motor vehicles." Id. at 1271 (emphasis in original). Evaluating the plaintiff's negligent-selection claims against these elements, the court found that Florida's common-law negligence standard satisfied the first requirement of the safety exception. Id. at 1270. But as to the second requirement, the court held that "a claim against a broker is necessarily one step removed from a 'motor vehicle' because 'the definitions make clear that … a broker … and the services it provides have no direct connection to motor vehicles.'" Id. at 1272 (quoting Miller v. C.H. Robinson Worldwide, Inc., 976 F.3d 1016, 1031 (9th Cir. 2020)) (omissions in original). Therefore, the negligence claim against the broker did not fall within the ambit of the safety exception. Id.

Here, in the Complaint Allied alleges three theories of negligence. Complaint ¶¶ 52–54. Under <u>Aspen</u>, the Court must analyze the specific allegations of each theory of negligence in relation to the role Dupre played in this specific transaction. <u>See</u> 65 F.4th at 1268. For each, the Court must determine whether the claim has "a connection with, or reference to" a broker's rates, routes, or services "with respect to the transportation of property." <u>See</u> <u>id.</u> at 1267 (quoting <u>Rowe</u>, 552 U.S. at 370).[9]

Allied first alleges Dupre "breached its duty to use reasonable care by negligently allowing the subject cargo to become damaged in transit when the truck ran into a low lying bridge, tearing off the top of the truck, allowing debris and moisture to penetrate the cargo during the delivery resulting in unacceptable damage and rejection of the load … ." Complaint ¶ 52. Allied next alleges that Dupre "breached its duty to use reasonable care when it failed to employ agents, servants, and/or employees with proper knowledge, training, and experience to perform the delivery … ." <u>Id.</u> ¶ 53. Last, Allied alleges that Dupre "breached its duty to use reasonable care when it failed to adequately

---

[9] Dupre argues the FAAAA "preempts <u>all state law claims</u>" against transportation brokers "other than those for breach of contract." Motion at 6 (emphasis in original). This broad interpretation of the FAAAA is inconsistent with the statute's plain language, which only prohibits states from enacting or enforcing laws "related to a price, route, or service of … any … broker … with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Albeit in discussing the breadth of preemption as applied to carriers, the Supreme Court has described the phrase "with respect to the transportation of property" as "massively limit[ing] the scope of preemption … ." <u>Dan's City</u>, 569 U.S. at 261.

supervise and inspect the work performed by its contractors, employees, and/or agents for the delivery … ." Id. ¶ 54.

The Court concludes all of these theories of negligence are "relate[d] to a broker's services with respect to the transportation of property." See Aspen, 65 F.4th at 1266–68. How cargo is carried, selecting people to carry cargo, and how agents are supervised when carrying cargo each "have a connection with" a broker's services with respect to "arranging for, receipt, delivery, elevation, transfer in transit, … and interchange of … property." See 49 U.S.C. § 13102(23)(B). The connection is that the broker's services set these activities in motion by arranging the transport of the cargo. Applying the state-law negligence standard to the alleged negligence theories Allied identifies in the Complaint would undermine Congress's legislative aims in enacting the FAAAA: namely, promoting "'maximum reliance on competitive market forces, thereby stimulating 'efficiency, innovation, and low prices,' as well as 'variety' and 'quality.'" See Rowe, 552 U.S. at 371.

Allied attempts to distinguish Aspen by arguing that "the state law claims against Dupre are not simply predicated on 'inadequate selection of a motor carrier.'" Response at 12 (quoting Complaint ¶ 52). Instead, according to Allied, "the state law claims allege Dupre 'negligently allow[ed] the subject cargo to become damaged in transit … .'" Id. (alteration in original). But Allied does not explain, and the Court fails to discern, why this distinction would command a

different result. While Allied is correct that the claims in this case are not identical to the claims in <u>Aspen</u>, (claims the court characterized as having "precisely" to do with "the brokerage service"), the allegation that Dupre allegedly "allow[ed]" harm to befall the cargo "in transit" nevertheless has "a connection with" Dupre's alleged "arranging for, receipt, delivery, elevation, transfer … and interchange of … property." <u>See</u> <u>Aspen</u>, 65 F.4th at 1267–68. Claims do not need to be precisely related to brokerage services for preemption to apply. <u>See</u> <u>id.</u> at 1267. Rather, claims will be preempted "even if the connection" to brokerage services "is only indirect." <u>Id.</u> And the safety exception does not save these claims. The Eleventh Circuit has made clear that the FAAAA's safety exception does not apply to brokers because a broker's services "have no direct connection to motor vehicles." <u>See</u> <u>id.</u> at 1272 (quoted). As such, the negligence claims in Count V are due to be dismissed because they are preempted by the FAAAA if Dupre acted as a broker and, according to Allied's own admission, by the Carmack Amendment if Dupre acted as a carrier.

> D.     Count VI (Equitable Subrogation)

In Count VI, Allied brings a claim for equitable subrogation. <u>See</u> Complaint at 8–9. Allied explains Count VI is "a state law claim for equitable subrogation … which incorporates the allegation that Howard entered into an agreement with Dupre to arrange the transportation" of the beds. Response at 13. As above, Allied acknowledges that the Carmack Amendment "preempts

state law claims" against carriers. Response at 4. For its part, Dupre does not argue that the FAAAA would preempt a contractual claim against a broker. <u>See</u> Motion. (To the contrary, Dupre emphasizes that "the FAAAA preempts all extra-contractual claims against brokers." Motion at 8.) For the reasons that follow, the Court finds that the claim in Count VI is a contractual claim. Because the parties do not dispute (and are correct) that the FAAAA allows claims for breach of contract against a broker, the request for dismissal of Count VI is due to be denied.

Under Florida law, equitable subrogation allows an insurer who discharges a debt, including a contractual debt, to "stand … in the shoes of the person whose claim has been discharged, thereby succeeding to the rights and priorities of the original creditor." <u>Dade Cnty. Sch. Bd. v. Radio Station WQBA</u>, 731 So. 2d 638, 647 (Fla. 1999) (quoting <u>E. Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n</u>, 508 So. 2d 1323, 1324 (Fla. 3d DCA 1987)). Indeed, the subrogee "acquires all rights as against the … wrongdoer and is thus able to bring an action against that party to recover the monies paid." <u>Id.</u> (quoting <u>Cleary Bros. Constr. Co. v. Upper Keys Marine Constr., Inc.</u>, 526 So. 2d 116, 116–17 (Fla. 3d DCA 1988)).

Here, as Howard's subrogee, Allied has "all rights" against Dupre that Howard would have had, including any alleged contract rights. <u>See</u> <u>Dade Cnty. Sch. Bd.</u>, 731 So. 2d at 647. On the face of the Complaint, in Count VI Allied

asserts a right to step in Howard's shoes and to assert any contract rights Howard may have had.[10] Because Dupre does not dispute that the FAAAA allows claims for breach of contract against a broker, the motion to dismiss Count VI is due to be denied to the extent Allied prosecutes the claim as a breach of contract between Howard and Dupre in its capacity as a broker.[11]

## IV.   Conclusion

The Motion is due to be denied as to Count IV—the Carmack Amendment claim—because Allied has pled facts sufficient to raise a reasonable inference that Dupre acted as a motor carrier with respect to the shipment of the bunk beds. The Motion is due to be granted as to Count V—the negligence

---

[10] In the Motion, Dupre does not argue that Count VI is an extra-contractual claim. See Motion. However, on the last page of the Reply, Dupre argues for the first time that Allied "makes no allegations of a breach of contract … ." Reply at 7. To the extent this argument is directed at the pleading standard, the Court does not address its merits. A reply is too late to raise additional arguments in support of a motion to dismiss. Nevertheless, the defense of failure to state a claim is not waived. See Rule 12(h)(2) ("Failure to state a claim upon which relief can be granted … may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."). Regardless, Allied plainly asserts that "the subject cargo was not delivered in good order and condition in breach of contract [of] carriage for the shipment." Complaint ¶ 13.

[11] If the Court determines at an appropriate stage of the litigation that Dupre acted as a motor carrier in this transaction, the claims in Count VI will be dismissed as preempted by the Carmack Amendment. Allied correctly concedes that "[t]he Carmack Amendment preempts state law claims" against motor carriers. Response at 4. See Adams Express Co. v. Croninger, 226 U.S. 491, 506 (1913) ("The duty to issue a bill of lading, and the liability thereby assumed, are covered in full; and though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject."); Smith v. United Parcel Service, 296 F.3d 1244, 1247 (11th Cir. 2002) ("Carmack Amendment preemption embraces … 'all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation … .'") (quoted authority omitted) (second omission in original).

claims—because the claims would be preempted by the FAAAA if Dupre acted as a broker and by the Carmack Amendment if Dupre acted as a motor carrier. The Motion is due to be denied as to Count VI—the equitable subrogation claim—to the extent Allied prosecutes the claim as a breach of contract between Howard and Dupre, because contractual claims against brokers are not preempted under the FAAAA.

Accordingly, it is

**ORDERED**:

1. Defendant Dupre Logistics, LLC's Motion to Dismiss Plaintiff's Complaint (Doc. 10) is **GRANTED IN PART** and **DENIED IN PART**.

   a. Dupre's Motion to Dismiss Plaintiff's Complaint is **DENIED** as to Counts IV and VI.

   b. Dupre's Motion to Dismiss Plaintiff's Complaint is **GRANTED** as to Count V.

2. Dupre must answer the Complaint in accordance with Rule 12.

**DONE AND ORDERED** in Jacksonville, Florida, on September 16, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

lc33

Copies to:

Counsel of Record